JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Ida Chodyna, appeals the judgment of the Common Pleas Court granting the motions for summary judgment of defendants-appellees, Cuyahoga County (the "County") and the Cuyahoga County Agricultural Society (the "Agricultural Society"). For the reasons that follow, we affirm.
 {¶ 2} Chodyna filed suit against the County, the Agricultural Society, Joyful Noise Festival, Inc., and Robert Sinkovic, d/b/a Joyful Noise Festival, for injuries she sustained when she fell over a bale of hay during a Joyful Noise Festival at the Cuyahoga County Fairgrounds in Berea, Ohio in June 2001.
 {¶ 3} Chodyna's complaint alleged that the defendants were negligent for failing to (1) keep the public grounds open, in repair, and free of nuisance; (2) require that Joyful Noise Festival, Inc. purchase sufficient insurance for the operation of the festival; (3) remove nuisances which had previously caused injury to festival attendees; and (4) inspect, maintain, and safeguard business invitees from forseeable injury. Chodyna also alleged that the defendants were liable for violating R.C.2744.02(B).
 {¶ 4} She subsequently obtained a default judgment against Sinkovic and Joyful Noise Festival, Inc. The County and the Agricultural Society then filed motions for summary judgment, which the trial court granted. This appeal followed.
 {¶ 5} In her single assignment of error, Chodyna asserts that the trial court erred in granting the County's and the Agricultural Society's motions for summary judgment.
 STANDARD OF REVIEW {¶ 6} This court reviews the trial court's judgment regarding a motion for summary judgment de novo and uses the same standard that the trial court applies under Civ.R. 56(C). See Renner v.Derin Acquisition Corp. (1996), 111 Ohio App.3d 326, 333; N.Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440.
 {¶ 7} Summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club,Inc. (1998), 82 Ohio St.3d 367, 369-370; Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327. To obtain a summary judgment under Civ.R. 56(C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421,430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id.; see, also,Mitseff v. Wheeler (1988), 38 Ohio ST.3d 112.
 ANALYSIS {¶ 8} In their respective briefs, Chodyna and the County argue extensively regarding whether owning and operating county fairgrounds is a governmental or proprietary function and whether the County and Agricultural Society are immune from liability pursuant to R.C. Chapter 2744, the Political Subdivision Tort Liability Act. We need not decide these issues in this case, however, because Chodyna failed to set forth any genuine issues of material fact regarding her negligence claim.
 {¶ 9} To establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom. Sedar v.Knowlton Construction Co. (1990), 49 Ohio St.3d 193. Here, Chodyna failed to establish that either the County or the Agricultural Society owed her any duty of care during her attendance at the Joyful Noise Festival.
 {¶ 10} Chodyna testified in her deposition that she volunteered to work in the ticket office at the festival, which featured Christian music, performances, displays and rides for children. She arrived at the county fairgrounds on June 8, 2001 at approximately 10:00 a.m. and went to the ticket booth, where she worked for approximately two hours.
 {¶ 11} After completing her work at the ticket booth, Chodyna entered the building where a character known as "Bibleman" was performing. Chodyna knew that her grandchildren would be sitting on the floor in front of the stage and that her daughter had saved a seat for her by the stage.
 {¶ 12} Chodyna testified that it was daylight when she entered the building but it was dark inside the building. The only lighting in the building came from lights on the stage where the performance was in progress. Chodyna admitted "there was no ceiling light coming down" anywhere other than over the stage.
 {¶ 13} She opened the door, immediately walked over to the left aisle, and began walking down the aisle. Chodyna testified that she did not wait for an usher with a flashlight to escort her down the aisle because "I thought I knew where I was going," nor did she wait to get acclimated to the lighting in the room before she walked down the aisle.
 {¶ 14} Chodyna testified that because of the darkness, she could see only the tops of the chairs, and not the floor, as she walked down the aisle, but she continued walking because "I thought I knew what was ahead." Approximately ten feet from the stage, she fell over a two and one-half foot high bale of hay that had been placed in the aisle for additional seating. Chodyna testified that she did not see the bale of hay because "it was too dark to see it. It was black."
 {¶ 15} In an affidavit attached to the County's motion for summary judgment, John Myers, Real Estate Manager for the Cuyahoga County Department of Central Services, averred that he is responsible for oversight of all County buildings and real estate. Further, Myers averred that although the County owns the fairgrounds in Berea where Chodyna fell, all day-to-day operations at the fairgrounds, including leasing the fairgrounds to third parties, are the responsibility of the Agricultural Society. Finally, Myers averred that Cuyahoga County is not a party to any leases between the Agricultural Society and third parties regarding the fairgrounds.
 {¶ 16} In an affidavit attached to the Agricultural Society's motion for summary judgment, John W. Jones, Director of the Agricultural Society, averred that on June 8, 2001, the Society rented the county fairgrounds to Joyful Noise Festival, Inc. Jones further averred that the Society did not provide any personnel to Joyful Noise Festival during the festival, nor did it cause the placement of bales of hay in any building. Chodyna testified that she had no information that either the County or the Agricultural Society were involved in the placement of the hay bales in the building and, further, that she believed their only involvement in the Joyful Noise Festival was the rental of the property to Sinkovich, who she believed was operating the festival.
 {¶ 17} The Ohio Supreme Court has stated that:
 {¶ 18} "[T]he test to be applied in every case involving the liability of a property owner for injuries arising from the defective condition of premises under lease to another is whether the landowner was in possession or control of the premises, or the part thereof, the disrepair of which caused the injury. The lessor is not liable for injuries to a third party in the absence of authority to exercise control over the premises to the exclusion of any control by the lessee. The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power." Willsv. Frank Hoover Supply (1986), 26 Ohio St.3d 186, 188 (citations omitted).
 {¶ 19} Accordingly, in Wills, supra, the Ohio Supreme Court held that the owner of land who had leased the property to a company for operation of an oil well was not liable for injuries sustained by children who were playing near the oil well. The Supreme Court stated:
 {¶ 20} "In the instant case, appellees attribute their injuries to an operating oil well pump owned by [the lessee], but located on [the lessor's] land pursuant to an oil and gas lease. The well and the well site were exclusively controlled by [the lessee], and the record in this case is totally devoid of any facts to the contrary. * * * In the absence of either occupation or control of the pump site itself, to wit: the part of the premises the disrepair of which caused the injury, [the owner] owed no duty to persons entering this area and the trial court was correct in granting summary judgment as to this appellant." Id. at 188-189.
 {¶ 21} This case is just like Wills. The evidence presented by the County and the Agricultural Society, which was unrefuted by Chodyna, demonstrated that neither entity controlled the fairgrounds during the festival. Rather, the Agricultural Society leased the premises to Joyful Noise Festival, Inc., which operated and controlled its own festival. Accordingly, likeWills, because neither the County nor the Agricultural Society occupied or controlled the fairgrounds during the festival, neither entity owed any duty of care to Chodyna. See, also,Stark Cty. Agricultural Society v. Brenner (1930),122 Ohio St. 560 (society not liable for injury to child caused by exploding firecracker where society leased fairgrounds to Veterans of Foreign Wars and had no part in planning or conducting the celebration).
 {¶ 22} Chodyna's argument that the Agricultural Society "controlled" the fairgrounds because it had the authority to decide who it would lease the site to is unpersuasive. "Inasmuch as the board is authorized to lease the grounds and buildings, the liability of the board for the condition of the grounds and the liability to persons injured on the grounds during the period of any lease of the grounds or buildings, or resulting from the use of the grounds or building by lessees, must be governed by the same principles which apply generally to situations growing out of the relations between landlords and their tenants." Id. at 567. Those principles, as set forth in Wills, supra, clearly indicate that a lessor has no duty to keep premises safe for third parties unless the lessor is in possession and control of the premises. Here, the evidence is uncontroverted that neither the County nor the Agricultural Society occupied or controlled the fairgrounds during the festival and, therefore, they owed no duty of care to Chodyna.
 {¶ 23} Chodyna relies on Wygonski v. Medina Cty.Agricultural Society, 122 Ohio Misc.2d 14, 2002-Ohio-7460, to support her argument that the County and Agricultural Society owed her a duty to keep the fairgrounds safe. In Wygonski,
several minors sued Medina County and the Medina County Agricultural Society after they drank soft drinks made with contaminated water while they were attending the Medina County Fair. The soft drinks were made with water supplied through the water system at the fairgrounds. The County of Medina filed a motion for summary judgment, in which it argued that it was immune from liability. The trial court denied the County's motion, however. The court held that the board of county commissioners was not immune from liability if the plaintiffs' injury resulted from the County's negligent maintenance of the water system. Contrary to Chodyna's assertion, the trial court did not find the County liable for negligence pursuant to R.C.2744.02(B)(2); the court merely held that the County was not immune from suit and, therefore, the plaintiffs' case against it could proceed. Thus, Wygonski does not stand for the proposition that the County or the Agricultural Society owed Chodyna a duty of care.
 {¶ 24} "Where there is no legal duty, there can be no actionable negligence." Id. at 571. Because neither the County nor the Agricultural Society owed Chodyna a duty of care during her attendance at the Joyful Noise Festival, the trial court properly granted summary judgment in their favor.
 {¶ 25} Chodyna's assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., P.J., and Rocco, J., concur.
*Sitting by Assignment: Joyce J. George, Retired, of the Ninth District Court of Appeals.